UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

FILED
LOGED
RECEIVED

APR 29 2013

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASH.
BY

| | | |
|---|---|---|
| ZAMBEZIA FILM  LTD., | : | |
| Plaintiff, | : | Case No. C13-0308MJP-RSL |
| v | : | Case No. C13-0311RAJ-RSL |
| DOES 1-66 | : | Case No. C13-0312JLR-RSL |
| Defendants | : | |
| | : | |

## JOHN DOE 20, 39, 43 OMNIBUS MOTION TO QUASH, ISSUE A PROTECTIVE ORDER, AND/OR SEVER AND/OR DISMISS, AND INCORPORATED MEMORANDUM OF LAW

Your honor, I received several letters from my ISP regarding a subpoena, which all included a copy of the Order Granting Plaintiff's Application for Leave to Take Discovery.

From accounts of previous defendants dealing with similar copyright lawsuits, these subpoena notifications once granted of the name and address of the IPS subscriber, plaintiffs without going into immediate further investigation to identify the true infringer that used IP internet connection for illicit purposes, instead plaintiffs send demanding settlement letters along with persistent phone calls to whom a certain IP address was assigned to, demanding variations of several thousands of dollars to avoid dealing with their lawsuit. For this reason, I respectfully request to do file this motion without revealing my personally identifying information.

Defendant, John Doe 20's, 39's, 43's files this Omnibus Motion and moves this



13-CV-00308-MEM

Court to: quash the subpoena directed at Comcast Cable Communications ("Comcast"), issue a protective order preventing the disclosure of John Doe 20's, 39's, 43's personally identifying information by Comcast, and/or sever and dismiss John Doe 1-66 from this case. Defendant requests oral argument to assist this Court in fully considering the matter to make an informed decision. In support, the Defendant relies on the following Memorandum of Law:

## I. INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff while referring to this exact same duplicate IP 71.231.2.115 address, has split into 3 different separate federal lawsuit cases against same person John Doe 20, 39, 43. Plaintiff improperly suing same defendant for the same film allegation of copyright infringement in three separate federal lawsuits.

Also to avoid paying proper court costs while suing as many individuals as possible, Plaintiff's lawyer Richard J Symmes then has improperly joined the rest of defendants in combination of 66 individual defendants based on entirely disparate alleged acts.

Plaintiff has also issued an unknown number of subpoenas seeking information about the identities of the Defendants, including a Rule 45 subpoena to the Internet Service Provider ("ISP") Comcast seeking information regarding the identity of Doe 20's, 39's 43 (the"Subpoena").

## II. ARGUMENT

## <u>Plaintiff improperly suing same defendant for the same allegation of copyright infringement in three separate federal lawsuits</u>

While referring to this exact same duplicate IP 71.231.2.115 address, Plaintiff has split into 3 different separate federal lawsuit cases of same person John Doe 20, 39, 43. This plaintiff's alleged IP address 71.231.2.115 is different from our current IP address. Plaintiff technical monitoring personnel failed to notice the repeat entries of identical IP address after sorting and filtering and filed 3 different Federal lawsuits. This calls into question their accuracy in managing their cases properly and reasoning for splitting up into separate cases, when case with the same IP address should all be joined. This leads to severe liability issue for not only disclosing to court that all three cases are related and failing to combine these 3 cases of same IP address into one federal lawsuit.

Plaintiffs strategic decision may be to split this same IP address into 3 different cases with assumption that each case will be assigned to 3 different judges. This way plaintiff's chances are increased of at least one case being granted by one of the judges. However all these 3 cases were referred to one judge. If Plaintiffs strategy succeeds having all 3 cases are granted by same judge, this will lead to Plaintiffs trying to extract 3 separate settlements from same IP subscriber to avoid dealing with their lawsuit. These 3 cases should be severed and dismissed due to Plaintiffs improperly trying to sue same defendant for the same allegation act of copyright infringement in three separate federal lawsuits.

## Defendant Should Be Dismissed and/or Severed Due to Misjoinder

Mass joinder of individuals has been disapproved by Federal courts in both RIAA cases

and elsewhere. As one court noted:

> Comcast subscriber John 1 could be innocent parent whose internet access was
> abused by her minor child, while Jogn Doe 2 might share a computer with a
> roommate who infringed Plaintiffs' works. John Does 3 through 203 could be
> thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and
> depriving them and their artists, of the royalties they are rightly owed....
> Wholesale litigation of these claims is inappropriate, at least with respect to vast
> majority (if not all) of defendants.

*BMG Music v. Does 1-203, No. Civ.A. 04-650, 2004 WL 953888, at \*1 (E.D. Pa. Apr. 2,
2004)* (severing lawsuit involving 203 defendants).

Plaintiff's joinder of 66 unrelated defendants in this single action is improper and
runs the tremendous risk of creating unfairness and denying individual justice to those
sued.  Plaintiff may argue that, unlike the RIAA case, its allegations here are based upon
use of the Internet to infringe a single work. This does not change legal analysis. Whether
the alleged infringement concerns a single copyrighted work or many, if it was
committed by unrelated 66 defendants, at different times and locations, sometimes using
different services, each defendant situation is not the same and is subject to different
defenses. That attenuated relationship is not sufficient for joinder. As such, John Does 1
through 66 should be severed and dismissed from the instant lawsuit pursuant to Fed. R.
Civ. P. 21. Joinder is appropriate under the Federal Rules only if:

> (A) any right to relief is asserted against them jointly, severally, or in the
> alternative with respect to or arising out of the same transaction, occurrence, or
> series of transactions or occurrences; and

> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). However, even if these parameters are met, joinder is not
necessarily mandatory. The Court may order separate trials to protect any party against

"embarrassment, delay, expense, or other prejudice."See Fed. R. Civ. 20(b). Where

misjoinder occurs, the court may, on just terms, add or drop a party so long as "no

substantial right will be prejudiced by severance." AF Holdings, LLC v. Does 1-97 , No.

C-11-3067-CW(DMR), slip op., 2011 WL2912909, at *2 (N.D. Cal. July 20, 2011)

(quoting Coughlin v. Rogers, 130 F.3d 1348, 1350 (9thCir. 1997)).

### 1. Plaintiff's Claims Do Not Arise Out of "the Same Transaction, Occurrence, or Series of Transactions or Occurrences"

Plaintiff would like this Court to believe that the mere use of BitTorrent Protocol

by the individual Defendants is sufficient to sustain their joinder in this action. However,

an individual Defendant's alleged use of BitTorrent Protocol does not necessitate the

inference that he or she had any interaction with any of the other 66 Defendants in this

case. Numerous courts handling similar cases have found that alleged copyright

infringement through the use of BitTorrent Protocol is insufficient to sustain permissive

joinder, both in the Eleventh Circuit and beyond.

As was noted in an analogous case recently decided in the Southern District of Florida:

> Under the BitTorrent Protocol, it is not necessary that each of the Does ...
> participated in or contributed to the downloading of each other's copies of the
> work at issue  – or even participated in or contributed to the downloading by any
> of the [other] Does.... Any "pieces" of the work copied or uploaded by any
> individual Doe may have gone to any other Doe or to any of the potentially
> thousands who participated in a given swarm. The bare fact that a Doe clicked on
> a command to participate in the BitTorrent Protocol does not mean that they were
> part of the downloading by unknown hundreds or thousands of individuals across
> the country or across the world.

*Liberty Media Holdings, LLC v. BitTorrent Swarm, 277 F.R.D. 672, 675 (S.D. Fla.*

*2011)(quoting Hard Drive Prods., Inc. v. Does 1-188, 809 F. Supp. 2d. 1150, 1164 (N.D.*

*Cal. Aug.23, 2011)); Liberty Media Holdings, LLC v. BitTorrent Swarm, 277 F.R.D. 669,*

*671 (S.D. Fla. 2011) (same).* Similarly noted in an analogous case in the Eastern
District of New York:

> Much of the BitTorrent protocol operates invisibly to the user – after
> downloading a file, subsequent uploading takes place automatically if the user
> fails to close program. Exhibit D to the complaints, which allegedly documents the
> "interactions" between defendants, is a page of machine instructions which clearly
> demonstrate that the user plays no role in these interactions. Indeed, "[t]he
>
> bare fact that Doe clicked on a command to participate in the BitTorrent Protocol
> does not mean that they were part of the downloading by unknown hundreds or
>
> thousands of individuals across the country or across the world." *Hard Drive
> Prods., Inc. v. Does 1-188,* 809 F.Supp.2d 1150, 1163 (N.D. Cal. 2011).

*In re: BitTorrent Adult Film Copyright Infringement Cases,* No. 2:11-cv-3995-DRH-

GRB, 2012WL 1570765, at *11 (E.D.N.Y. May 1, 2012).

   Many courts, including the Middle District of Florida, have reasoned that John

Doe defendants in analogous lawsuits were improperly joined based the large time span

between each defendant's alleged sharing of the file *Patrick Collins, Inc. v. Does 1-16,* No.

6:12-cv-477-ACC-KRS, Order to Show Cause [Doc. No. 7] (M.D. Fla. Apr. 5, 2012)

(ordering plaintiff to show cause why defendants should not be severed when "access

occurred on different dates"); *RawFilms, Inc. v. Does 1-32,* No. 1:11-CV-2939-TWT, slip.

op., 2011 WL 6840590, at *2 (N.D. Ga.Dec. 29, 2011) (time span of more than 4

months); *K-Beech, Inc. v. Does 1-63,* No. 1:11-CV-02941-CAP, at 6 (N.D. Ga. Dec. 5, 2011)

(time span of almost 3 months); *Liberty Media Holdings, LLC,* 277 F.R.D. at 675 (time

span of 2 months); *Liberty Media Holdings, LLC v. BitTorrent Swarm,* 277 F.R.D. at 671

(time span of 2 months); *Hard Drive Prods., Inc.,* 809F.Supp.2d 1150, 1163 (time span of

6 weeks).

In Raw Films, Inc., the court found that "downloading a work as part of a swarm does not constitute 'acting in concert' with one another, particularly when the transactions happen over a long period." 2011 WL 6840590, at *2; *see also K-Beech, Inc.*, No. 1:11-CV-02941-CAP, at 4 (N.D. Ga. Dec. 5, 2011) (order granting motion to sever). In explanation of that finding, the court reasoned that:

> [t]he differing dates and times of each Defendant's alleged sharing do not allow for an inference that the Defendants were acting in concert. While the Defendants may have used the same peer-to-peer system, the Complaint does not allege that they were sharing with each other.

*Id.* at *2; *see also K-Beech, Inc.*, No. 1:11-CV-02941-CAP, at 5-6 (N.D. Ga. Dec. 5, 2011).

Plaintiff concedes that in order for one Defendant to have shared a file with another Defendant, both would need to be online simultaneously. (E.g. Mem. in Supp. of Mot. for Exp. Disc. [Doc. No. 6], at 7 ("Because of the nature of a P2P protocol, any seed peer who has downloaded a file prior to the time a subsequent peer downloads the same file is a possible source for the subsequent peer so long as that first seed peer is online at the time the subsequent peer downloads a file") (emphasis added).) However, Plaintiff does **not** allege that Defendants were sharing the file simultaneously.

Plaintiff's allegation that all of the Defendants shared a file identified by the same "hashtag" does not warrant the implication that Defendants exchanged any piece of the relevant file with each other or actually acted in concert with one another. *See, e.g., MCGIP, LLC v. Does 1-149*, No. C 11-02331 LB, slip op., 2011 WL 4352110, at *3 (N.D. Cal. Sept. 16, 2011) (finding misjoinder where the plaintiff failed to show that any

of the defendants actually exchanged any piece of the seed file with one another); *Boy Racer, Inc. v. Does 1-60*, No. C 11-01738 SI, slip op., 2011 WL 3652521, at *4 (N.D. Cal. Aug. 19, 2011) (finding misjoinder because "Plaintiff [did] not plead facts showing that any particular defendant illegally shared plaintiff's work with any other particular defendant"). Plaintiff's allegations that Defendants committed the same type of violation in the same way simply does not equate to participation in the same transaction, occurrence, or series of transaction or occurrence. *See LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WL 544992, at *7 (E.D.N.C. Feb. 27, 2008). This basis alone is sufficient to warrant the severance of the Defendants.

### 2. Joinder Will Prejudice the Defendants Moving Forward and Result in a Lack of Judicial Economy

"Among the factors to be considered by the court in exercising its discretion under Rule 21 are whether . . . judicial economy would be facilitated, whether prejudice would be avoided if severance were granted, and whether different witnesses and documentary proof are required for the separate claims." *Hartley v. Clark*, No. 3:09cv559/RV/EMT, 2010 WL 1187880, at *4 (N.D.Fla. Feb. 12, 2010); *see also*, 7 Charles Alan Wright, et al., *Federal Practice and Procedure* §1652, at 396 (3d ed. 2001) ("[T]he court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objective of the rule, but will result in prejudice, expense or delay").

While Plaintiff's litigation tactic of joining unrelated Defendants in this action results in substantial economic benefit to the Plaintiff, it results in an overall lack of judicial economy for the Court and Defendants. In effect, Plaintiff's improper joinder tactics rob the court of the fees it requires to adjudicate such actions. In a similar case, the

Northern District of Illinois recognized that:

> In addition to the procedural improprieties outlined above, the plaintiffs' tactics
> deny the federal courts additional revenue from filing fees in the suits that should
> be filed to obtain the information the plaintiffs desire. *CP Prods.*, 2011 WL 737761,
> at *1 ("No predicate has been shown for thus combining 300 separate actions on
> the cheap − if CP had sued the 300 claimed infringers separately for their discrete
> infringements, the filing fees along would have aggregated $105,000 rather than
> $350.")

*Pacific Century Int'l, LTD v. Does 1-37*, No. 1:12-cv-01057 (consolidated action), 2012

WL1072312, at *5 n.15 (N.D. Ill. Mar. 30, 2012). This was also recognized and discussed

in great detail in an analogous case in the Eastern District of New York:

> In multidistrict cases considering severance of cases, courts have noted that the
> filing fee has:

> > Two salutary purposes. First, it is a revenue raising measure… Second,
> > §1914(a) acts as a threshold barrier, albeit a modest one, against the filing
> > of frivolous or otherwise meritless lawsuits. Had each plaintiff initially
> > instituted a separate lawsuit as should have occurred here, a fee would have
> > been collected for each one…Thus, the federal fisc and more particularly
> > the federal courts are being wrongfully deprived of their due. By
> > misjoining claims, a lawyer or party need not balance the payment of the
> > filing fee against the merits of the claim or claims.

> *In re Diet Drugs*, 325 F. Supp. 2d 540, 541-42 (E.D. Pa. 2004); *see also In re*

*Seroquel Prods. Liability Litig.*, 2007 WL 737589, at *2-3 (M.D. Fla. Mar. 7,2007) (denying

reduction of filing fees, noting the burden on the court and the "gate keeping feature of a

filing fee").

Several courts in similar cases involving BitTorrent protocol have also recognized the

effect of a countenancing a single filing fee. One court described the "common arc of the

plaintiffs' litigation tactics" in these cases:

> ...these mass copyright infringement cases have emerged as a strong tool for leveraging settlements – a tool whose efficacy is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers.

*Pacific Century*, 2012 WL 1072312, at *3. Thus, the plaintiffs file a single case, and pay one filing fee, to limit their expenses as against the amount of settlements they are able to negotiate. Postponing a determination on joinder in these cases "results in lost revenue of perhaps millions of dollars (from lost filing fees) and only encourages plaintiffs in copyright actions to join (or misjoin) as many doe defendants as possible." *K-Beech, Inc. v. John Does 1-41*, 2012 WL 773683, at *5(S.D. Tex. 2012).

Joinder of 66 unrelated Defendants in this case will result in severe practical problems moving forward. The Defendants, proceeding both pro se and through counsel, will likely assert different legal and factual defenses that apply to them particularly, or only a fraction of the 66 Defendants. Based on an individual Defendant's circumstances, he or she may be asserting legal defenses based on copyright invalidity, de minimis copying, fair use, grant of permission or a license, copyright misuse, acquiescence, unclean hands, and/or estoppel. Further, the individual Defendants are are likely to put forward a variety of factual defenses and will identify different witnesses.

Failure to sever at this stage in the litigation will so severely economically prejudice the Defendants in this case that most would be unable to afford pursuing valid defenses and be forced into accepting settlement offers. See *Bridgeport Music, Inc. v.*

11C Music, 202 F.R.D. 229, 233 (M.D. Tenn. 2001) ("If joined in one action, these Defendants will be subject to an overwhelming onslaught of materials and information unrelated to the specific claims against them — all of which they must pay their attorneys to review."). To prevent prejudicing the Defendants and maximize judicial economy, this should sever and dismiss the all Defendants from this case.

### C. The Subpoena Should be Quashed or a Protective Order Issued Because the Information Sought is Irrelevant

"The foremost fundamental principle regarding subpoenaed discovery is that a subpoena duces tecum to obtain materials in advance of trial should be issued only when the party seeking the materials can show that the materials are evidentiary and relevant." *Straily v. UBS Fin. Servs., Inc.*, No. 07-cv-884-REB-KMT, 2008 WL 5378148, at *1 (D. Colo. Dec. 23, 2008); 81Am. Jur. 2d *Witnesses § 20*. A subpoena may be quashed and/or a protective order may properly be issued when a subpoena seeks irrelevant information. *See Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996); cf. Fed. R. Civ. P. 26(b). The term "relevant" as used in Rule 26 and implied in Rule 45 is broad, but not exhaustive. While matters which may aid a party in the preparation or presentation of its case are relevant, matters without bearing either as direct evidence or as leads to evidence are not within the scope of inquiry. *See Lewis v. United Air Lines Transp. Corp.*, 27 F.Supp. 946 (D. Conn. 1939). As the Subpoena here was issued prior to the Rule 26(f) conference, the relevancy of the discovery sought should be even more narrowly tailored to that information which is necessary to definitely and immediately allow Plaintiff to proceed with this lawsuit. Here, the

subpoenaed information will not allow Plaintiff to identify the individuals responsible for infringing its copyright and who could properly be named as Defendants in this lawsuit.

The discovery requested through Plaintiff's Subpoena is based on the faulty assumption that the Internet subscribers identified in Exhibit A to the Complaint are the individuals who actually infringed Plaintiff's copyright. The only individual that can be identified through an IP address is an ISP subscriber. Many courts have recognized that "the ISP subscribers to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes." *SBO Pictures, Inc. v. Does 1-3036*, No. 11-4220 SC, 2011 WL 6002620, at *3 (N.D. Cal. Nov. 30, 2011); *e.g. In re: Ingenuity 13 LLC*, No. 2:11-mc-0084-JAM-DAD, Order[Doc. No. 24], at *10 (E.D. Cal. Mar. 21, 2012) ("the identities of the subscribers associated with the identified IP addresses ... would not reveal who actually downloaded petitioner's work, since the subscriber's internet connection could have been used by another person at the subscriber's location, or by an unknown party who obtained access to the subscriber's internet connection without authorization"); *Hard Drive Productions, Inc. v. Does 1-130*, No. C-11-3826-DMR, 2011 WL 553960, at *2 (N.D. Cal., Nov. 16 2011) ("Plaintiff concedes, in some cases the Subscriber and the Doe Defendant will not be the same individual"); *Pac. Century Int'l Ltd. v. Does 1-101*, No. C-11-02533-DMR, 2011 WL 5117424, at *2 (N.D. Cal. Oct. 27, 2011).

An IP address provides only the location at which one of any number of computer devices may be deployed, especially when used with a wireless router. The United States District Court for the Eastern District of New York noted that:

> If you only connect one computer to the Internet, that computer can use the
> address from your ISP. Many homes today, though, use routers to share a single
> Internet connection between multiple computers. Wireless routers have become
> especially popular in recent years, avoiding the need to run network cables
> between rooms. If you use a router to share an Internet connection, the router
> gets the IP address issued directly from the ISP. Then, it creates and manages a
> subnet for all the computers connected to that router.

In re: BitTorrent Adult Film Copyright Infringement Cases, 2012 WL 1570765, at *3
(quoting "What is an IP address?" available at
http://computer.howstuffworks.com/internet/basics/question5492.htm).

The copyright holders who start these cases generally provide nothing
more than an IP-address as evidence. They then ask the courts to grant a
subpoena, allowing them to ask Internet providers for the personal details of the
alleged offenders. Previous judges who handled BitTorrent cases have
made observations along these lines, but none have been as detailed as New
York Magistrate Judge Gary Brown was in his order.

> The assumption that the person who pays for Internet access at a given
> location is the same individual who allegedly downloaded a single sexually
> explicit film is tenuous, and one that has grown more so over time. An IP
> address provides only the location at which one of any number of computer
> devices may be deployed, much like a telephone number can be used for any
> number of telephones.

"Thus, it is no more likely that the subscriber to an IP address carried out a
particular computer function – here the purported illegal downloading of a single
pornographic film – than to say an individual who pays the telephone bill made a
specific telephone call."

> It is possible that any family member living in that household, or visitor of that
> household, could have performed the complained of infringement. Unless the
> wireless router had been appropriately secured (and that security had not been
> compromised), neighbors or a passersby could assess the Internet using the IP
> address assigned to a particular subscriber and download Plaintiff's works. "While
> a decade ago, home wireless networks were nearly non-existent, 61% of
> US homes now have wireless access. As a result, a single IP address
> usually supports multiple computer devices – which unlike traditional

> telephones can be operated simultaneously by different individuals.
> Different family members, or even visitors, could have performed the
> alleged downloads. Unless the wireless router has been appropriately
> secured (and security had not been compromised), neighbors or
> passersby could access the Internet using the IP address assigned to a
> particular subscriber and download the plaintiff's film."

The Judge continues by arguing that having an IP-address as evidence is even weaker than a telephone number, as the majority of US homes have a wireless network nowadays. This means that many people, including complete strangers if one has an open network, can use the same IP-address simultaneously. Illustrating this fact, the court in *VPR International v. Does 1-1017*, 2:11-cv-02068-HAB-DGB (C.D. Ill. Apr.29, 2011) cited an instance involving a raid by federal agents on a home that was linked to downloaded child pornography:

> The identity and location of the subscriber were provided by the ISP. The desktop
> computer, iPhones, and iPads of the homeowner and his wife were seized in the
> raid. Federal agents returned the equipment after determining that no one a tthe
> home had downloaded the illegal material. Agents eventually traced the
> downloads to a neighbor who had used multiple ISP subscribers' Wi
> -Fi connections (including a secure connection form the State University of New
> York).

*Id.*at 2 (citing Carolyn Thompson, Bizarre Pornography Raid Underscores Wi-Fi Privacy

Risks (April 25, 2011),

http://www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless/).


These circumstances create serious doubt as to Plaintiff's claim that the expedited discovery sought will produce information sufficient to identify the individuals who actually infringed upon Plaintiff's copyright. As one judge observed:

> The Court is concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded "My Little Panties # 2." The risk is not purely speculative; **Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of the individuals who actually downloaded or shared copyrighted material.**

*Digital Sin, Inc. v. Does 1-176*, --F.R.D.--, 2012 WL 263491, at *3 (S.D.N.Y. Jan. 30, 2012)(emphasis added); also *SBO Pictures*, 2011 WL 6002620, at *3.

Further, studies have shown that the type of tracking software used by investigators, such as IPP, International, to identify BitTorrent users often produces a large number of false positive IP hits. One study performed by the Department of Computer Science and Engineering at the University of Washington determined that "copyright holders utilize inconclusive methods for identifying infringing BitTorrent users. [The Researchers] were able to generate hundreds of DMCA takedown notices for machines under [their] control at the University of Washington that were not downloading or sharing any content." Michael Piatek et al., *Challenges and Directions for Monitoring P2P File Sharing Networks – or – Why My Printer Received a DMCA Takedown Notice*, 3rd USENIX Workshop on Hot Topics in Security 2008, (July 29, 2008)http://www.usenix.org/event/hotsec08/tech/full_papers/piatek/piatek.pdf. Specifically, the article concludes:

> [W]e find that it is possible for a malicious user (or buggy software) to implicate(frame) seemingly any network endpoint in the sharing of copyrighted materials. We have applied these techniques to frame networked printers, a wireless (non-NAT) access point, and an innocent desktop computer, all of which have since received DMCA takedown notices but none of which actually participated in anyP2P networks.

Accordingly, the confidential information sought by Plaintiff regarding the identity of John Doe 20, 39, 43 in which the Defendant holds a congressionally recognized privacy interest, is irrelevant to this lawsuit based on inaccuracy of the tracking software and the fact that many individuals will often access the Internet through the same ISP account. As such, this Court should quash the subpoena and/or issue a protective order preventing the disclosure of John Doe 20's, 39's, 43's personally identifying  information by Comcast.

### III. CONCLUSION

Joining unrelated defendants in one lawsuit makes litigation less expensive for Plaintiffs by enabling to avoid the separate filing fees required for individual cases. Plaintiff has demonstrated that it is far more interested in obtaining Defendants contact information for use in extracting large settlements than the formalities of the legal process and privacy interest of the affected individuals.

Plaintiff's joinder of 66 Defendants is improper because Plaintiff's claims do not arise out of the same transaction, occurrence, or series thereof, and it prejudices the Defendants while undermining judicial economy. Plaintiff's Subpoena seeks information that is irrelevant to the lawsuit and in which the Defendant holds a congressionally recognized privacy interest. Because this improper joining of these Doe defendants into this one lawsuit raises serious questions of individual justice.

WHEREFORE, premises considered, Doe 20, 39, 43 respectfully requests that this Court:

(a) Sever and dismiss and sever all Defendants pursuant for misjoiner.

(b) Quash the Subpoena pursuant to Federal Rule of Civil Procedure 45;

(c) Issue a protective order prohibiting Comcast from disclosing John Doe 20's, 39's, 43's personally identifying information pursuant to Federal Rule of Civil Procedure 26.

Dated: 4/25/2013

Respectfully submitted,

*John Doe*

John Doe
*Pro se*

## CERTIFICATE OF SERVICE

I hereby certify that on 4/25/2013, I _John Doe_ served a copy of the foregoing document, via US Mail, to:

Richard J Symmes
Zambezia Film (pty.) Ltd.
1001 4th Avenue, Suite 3200
Seattle, WA 98154